UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ORION MARINE CONSTRUCTION, INC. | |
| PLAINTIFFS, | CIVIL ACTION NO.:          4:17-cv-522 |
| VERSUS | JUDGE: |
| MARK COYLE, CROSBY DREDGING, LLC (TX), AND CROSBY DREDGING, LLC (LA) | MAGISTRATE: |
| DEFENDANTS. | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER, TO SET A PRELIMINARY INJUNCTION
HEARING, AND FOR AN ORDER PERMITTING EXPEDITED DISCOVERY

Plaintiff Orion Marine Construction, Inc. ("Orion"), respectfully submits this Memorandum of Law in support of its application for a temporary restraining order prohibiting its former employee, Defendant Mark Coyle, and his current employer Defendants Crosby Dredging, LLC, formed under Texas law, and Crosby Dredging, LLC, formed under Louisiana law, (collectively "Defendants") from using and/or disclosing of Orion's misappropriated confidential information and trade secrets to unfairly compete in violation of applicable federal and state law. Further, Orion requests that this Court order Defendants to produce Coyle's personal and business computer(s), cellphone(s), and email account(s) for forensic investigation on an expedited discovery basis so that Orion can determine the extent of Defendants' misappropriation and ensure that relevant evidence is preserved.

**TABLE OF CONTENTS**

I.    Introduction ................................................................................................................. 1

II.   Factual Background .................................................................................................... 1

III.  Argument ..................................................................................................................... 4

   A. The Standard For Injunctive Relief....................................................................... 4

   B. Orion is Likely to Succeed on the Merits ............................................................. 5

      1. Orion's Confidential Information was Protected................................................. 5

      2. Coyle Improperly Accessed and Transmitted Orion's Confidential, Proprietary, and Trade Secret Information .................................................................................. 8

   C. Orion Will Suffer Irreparable Harm .................................................................... 11

   D. Orion's Injury Outweighs Threatened Harm To Coyle, Crosby Texas, And Crosby Louisiana............................................................................................................ 13

   E. Injunctive Relief Will Not Disserve The Public Interest ................................... 15

   F. Expedited Discovery Related to the Merits of Plaintiff's Request for Injunctive Relief, Including an Immediate Forensic Inspection, is Warranted ............................... 15

IV.  CONCLUSION.......................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Systems LLC v. Real Action Paintball Inc.*
No. 12-0296, 2013 U.S. Dist. LEXIS 25022 (N.D. Ind. Feb. 25, 2013) ................................14

*Allied Marketing Group, Inc. v. CDL Marketing, Inc.*
878 F.2d 806 (5th Cir. 1989) ............................................................................................11

*Am. Express Fin. Advisors, Inc. v. Scott*
955 F. Supp. 688 (N.D. Tex. 1996) ...................................................................................12

*Am. Precision Vibrator Co. v. Natl. Air Vibrator Co.*
764 S.W.2d 274 (Tex.Civ.App.-Houston [1st Dist.] 1988), *as modified*, 771
S.W.2d 562 (Tex.Civ.App.-Houston [1st Dist.] 1989)........................................................6, 7

*Ameriwood Industries, Inc. v. Liberman*
No. 06–0524, 2006 WL 3 825291 (E.D. Mo. Dec. 27, 2006) ...............................................14

*AutoNation, Inc. v. Hatfield*
2006 WL 60547 (Fla. Cir. Ct. Jan. 4, 2006) ......................................................................15

*Balboa Threadworks, Inc. v. Stucky*
No. 05–11157–JTM–DWB, 2006 WL 763668 (D.Kan. Mar.24, 2006)..................................14

*ChillCo, Inc. v. Jay Yuratich and Texas Gulf Refrigeration, Inc. d/b/a Texas Gulf*
*Refrigeration Industrial Sales & Rentals*
Temporary Restraining Order, No. 12-2152..................................................................14

*ClearOne Communications, Inc. v. Chiang*
608 F. Supp. 2d 1270 (D. Utah 2009)...............................................................................14

*Consumer Sales & Mktg. Inc. v. Digital Equip. Corp.*
No. 95-5049, 1995 U.S. Dist. LEXIS 13374 (N.D. Ill. Sept. 11, 1995) ................................15

*Deerfield Med. Ctr. v. City of Deerfield Beach*
661 F.2d 328 (5th Cir. 1981) ............................................................................................11

*Edudata Corp. v. Scientific Computers, Inc.*
599 F.Supp. 1084 (D. Minn. 1984)...................................................................................15

*Ellsworth Assocs., Inc. v. United States*
917 F. Supp. 841 (D.D.C. 1996) ......................................................................................15

*Engineered Mechanical Services, Inc. v. Langlois*
464 So. 2d 329 (La. App. 1st Cir. 1984).........................................................................6, 9

*FMC Corp. v. Varco Int'l, Inc.*
    677 F.2d 500 (5th Cir. 1982) ................................................................12

*Genworth Fin. Wealth Management, Inc. v. McMullan*
    267 F.R.D. 443 (D. Conn. Jun. 1, 2010) ...............................................14

*H&W Indus., Inc. v. Formosa Plastics Corp., USA*
    860 F.2d 172 (5th Cir. 1988) ................................................................16

*Haley v. Merial, Ltd.*
    No. 09-94, 2010 WL 2710637 (N.D. Miss. July 7, 2010) .....................15

*Johnson Controls, Inc. v. Guidry*
    724 F. Supp. 2d 612 (W.D. La. 2010).....................................................9

*McCann v. Barton,*
    No. 08-00574, 2009 WL 900741 (W.D. Mo. Apr. 1, 2009) ...................14

*NCH Corp. v. Broyles*
    749 F.2d 247 (5th Cir. 1985) .................................................................9

*Newsouth Commc'ns Corp. v. Universal Tel. Co.*
    No. CIV.A. 02-2722, 2002 WL 31246558 (E.D. La. Oct. 4, 2002) .......11

*Picker Int'l, Inc. v. Blanton*
    756 F. Supp. 971 (N.D. Tex. 1990) .......................................................12

*Planned Parenthood of Gulf Coast, Inc. v. Gee*
    837 F.3d 477 (5th Cir. 2016) .................................................................4

*Pyro Spectaculars North, Inc. v. Souza*
    861 F. Supp. 2d 1079 (E.D. Cal. 2012)..................................................14

*SKF USA Inc. v. Bjerkness*
    636 F.Supp. 2d 696(N.D. Ill. 2009) .......................................................14

*Sugar Busters LLC v. Brennan*
    177 F.3d 258 (5th Cir. 1999) ................................................................13

*Tubos de Acero de Mexico v. American Intern. Inv.*
    292 F.3d 471 (5th Cir. 2002) .................................................................7

*Tubular Threading, Inc. v. Scandaliato*
    443 So.2d 712 (La. App. 5th Cir. Dec. 8, 1983).....................................7

**Statutes**

18 U.S.C. § 1836...................................................................................................11

18 U.S.C. §1839...............................................................................................5, 8

La. Rev. Stat. §51:1431................................................................................5, 6, 7, 8, 9

La. Stat. Ann. § 51:1405...........................................................................................9

Tex. Civ. Prac. & Rem. Code Ann. § 134A.002................................................................5, 8

**Other Authorities**

Fed. R. Civ. P. 26..................................................................................................15

Fed. R. Civ. P. 65....................................................................................................4

## I.  <u>INTRODUCTION</u>

Mark Coyle ("Cole"), Orion's former Vice President of Business Development, misappropriated Orion's confidential, proprietary and trade secret information and, without immediate relief from this Court, stands poised to use and/or continue to use that information to disastrous effect against Orion.  Specifically, in advance of his resignation, Orion forwarded at least 10 confidential documents containing confidential bid, survey, and project data (trade secrets) to his personal email for personal use in direct violation of Orion policy. Moreover, prior to resigning, Coyle accepted a position of employment with a competitor, Crosby Dredging, LLC, formed under Texas law, and Crosby Dredging, LLC, formed under Louisiana law, (collectively "Crosby Dredging"). The evidence shows Defendants conspired to misappropriate Orion's confidential, proprietary and trade secret information in order to harm Orion and unfairly compete against Orion.  Defendants actions therefore violate federal and state law and must be enjoined. Furthermore, Orion must be allowed to examine Coyle's electronic devices and emails in order to determine the extent of Defendants' misappropriation and preserve relevant evidence.

## II.  <u>FACTUAL BACKGROUND</u> [1]

Orion is a leading provider of heavy marine construction services to federal and state governments, military branches, and private entities in the oil and gas and private transportation port industries. Coyle began his employment with Orion in or around December, 1998, as Manager of Business Development, and was later promoted to V.P. of Business Development. As V.P. of Business Development, Coyle led short & long term strategic marketing and business development for Orion in the areas surrounding the Gulf of Mexico. Coyle primarily focused his

---

[1]    All of the facts set forth in the Factual Background are supported by allegations within the Complaint, Rec. Doc. 1.

time on securing projects and clients in the State of Texas, where he lived and his office was based, and the State of Louisiana.

As part of Orion's senior management team, Coyle played a major role in targeting specific projects and specific clients to maintain and expand Orion's heavy marine construction portfolio. In order to carry out his duties, Coyle had access to Orion's confidential, proprietary, and trade secret information, including, but not limited to, business objectives, bid proposals, pricing lists, pricing indexes, targeted projects, prospective projects, client lists, prospective client lists, budgets, marketing plans, and project management processes and procedures. Because of his position, accomplishments, contacts and tenure – nearly 20 years – Coyle had intimate access to confidential information and trade secrets related to Orion business.

Orion went to great lengths to protect this information by, amongst other things, detailing the vital importance of this confidential information and explaining how it ensures Orion's place atop the heavy marine construction market to all employees, including Coyle, through its *Code of Business Conduct and Ethics* and its *Corporate Ethics & Legal Compliance Policy Statement.* In August 2008, Coyle acknowledged that he read and understood both the *Ethics Code* and *Ethics Policy Statement* by signing separate acknowledgements for each. He acknowledged that he was required to comply with all the provisions set forth therein, and agreed to (1) not access or retain Orion's confidential information, trade secrets, and proprietary information for personal use; (2) not disclose Orion's confidential information, trade secrets, and proprietary information to third parties or use any such information to the detriment of Orion; and (3) not directly engage in activities to the detriment Orion and to be loyal to Orion at all times during his employment.

Based on information and belief, Coyle began looking at employment opportunities outside of Orion in or before December 2016.   During this time, Orion started locating,

obtaining, and collecting Orion's confidential information and trade secrets for his personal use after he left Orion. Based on information and belief, on or before January 9, 2017, Coyle secured employment with Crosby Dredging to provide the same services he was providing to Orion. Based on information and belief, after Crosby Dredging agreed to hire Coyle, the Defendants conspired to misappropriate Orion's confidential information and trade secrets in order to unlawfully compete against.

For example, on January 9, 2017, the day Coyle gave his two-week notice of resignation to Orion, he accessed without authorization and/or exceeding his authorization and forward confidential, proprietary, and/or trade secret information regarding Orion's bid pricing, survey data, and prospective projects. A full description of the information Orion currently knows Coyle to have misappropriated is set forth in Paragraphs 31 of Plaintiff's Complaint. There was no legitimate business reason for Coyle to forward Orion's confidential, proprietary, and trade secret information to his personal email address.

This information includes a detailed spreadsheet with prospective projects through 2018. The spreadsheet provides the customer name, project description, location, project schedule, estimated budget, customer contact, and specific comments regarding each project. **The aggregate amount of these projects is several hundred million dollars.**

On January 20, 2017, Coyle officially resigned from his position and Orion learned that he had accepted employment with Crosby Dredging, Orion's direct competitor in Texas and Louisiana. Shortly after, on January 25, 2017, Orion sent letters to both Coyle and Crosby Dredging putting the Defendants on notice of the misappropriation of Orion's confidential, proprietary, and trade secret information and demanding that the Defendants return Orion's property immediately. Orion only received a response from Crosby Dredging, wherein counsel

for Crosby Dredging represented that Kurt Crosby, Crosby Dredging's member, did not personally possess Orion's confidential, proprietary or trade secret information. Orion has not received a response from Coyle as of the date of this filing.

The evidence shows Defendants are currently in possession of Orion's confidential, proprietary, and trade secret information and intend to use that information for unlawful purposes – namely to destroy Orion's competitive advantage through unlawful and unfair competition.

## IV.   ARGUMENT

### A.   THE STANDARD FOR INJUNCTIVE RELIEF

A plaintiff seeking a preliminary injunction must clearly show: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) its threatened injury outweighs the threatened harm to the party whom it seeks to enjoin; and (4) granting the preliminary injunction will not disserve the public interest. Fed. R. Civ. P. 65; *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d 477, 488 (5th Cir. 2016).

Orion's request satisfies the four elements stated above. First, the evidence demonstrates that it is likely to succeed on the merits because Coyle agreed not to access and/or disclose Orion's confidential, proprietary, and trade secret information without its consent, but nevertheless, violated Orion's *Ethics Code* and *Ethics Policy Statement* and accessed and forwarded Orion's confidential and trade secret information to himself for use at Crosby Dredging. Further, Coyle breached the fiduciary duties he owed to Orion and the materials at issue qualify as trade secrets under both federal and state law. Second, the nature of the information misappropriated by Coyle establishes that there is a substantial threat that Orion will suffer irreparable harm due to Coyle's misconduct. Third, Orion's threatened injury – including but not limited to, loss of customers, competitive advantage, and goodwill – outweighs any of

interests of Defendants to compete unfairly. Finally, granting Orion's request for injunctive relief will not disserve the public interest; instead, it will promote honest competition and fair business practices.

**B.     ORION IS LIKELY TO SUCCEED ON THE MERITS**

There is a substantial likelihood that Orion will prevail on the merits of this case because the evidence overwhelmingly shows that both during and after his employment, Coyle: (1) breached Orion's *Ethics Code*; (2) breached Orion's *Ethics Policy Statement*; (3) breached the fiduciary duty of loyalty he owed to Orion; and (4) violated state and federal law when he misappropriated confidential, proprietary, and trade secret information to benefit a direct competitor.

### 1.     Orion's Confidential Information was Protected

Orion's confidential, proprietary, and trade secret information is/was protected through law and by agreement between Orion and Coyle.

First, Orion's confidential, proprietary, and trade secret information is/was protected from misappropriation through federal and state statute. The Defend Trade Secrets Act, the Texas Uniform Trade Secret Act, and the Louisiana Uniform Trade Secret Act all prohibit the misappropriation, possession, and conspiracy to misappropriate trade secrets. 18 U.S.C. §1839; Tex. Civ. Prac. & Rem. Code Ann. § 134A.002; La. Rev. Stat. §51:1431. "Trade Secret" includes all forms of financial, business, and economic information including plans, compilations, program devices, formulas, methods, techniques, processes, procedures, or programs if the owner has taken reasonable measures to keep the information secret, and the information derives independent economic value from not being known to another person who can derive its value. 18 U.S.C. §1839(3). Both the Texas Uniform Trade Secret Act and the Louisiana Uniform Trade Secret Act have similar definitions of "Trade Secret." See Tex. Civ.

Prac. & Rem. Code Ann. § 134A.002(6) ( information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable); see also, La. Rev. Stat. §51:1431(4) (information "that derives independent economic value from not being generally known to other persons who can obtain economic value from its disclosure").

Second, Orion's confidential, proprietary, and trade secret information was protected from Defendants' realized conspiracy to misappropriate under the common law theory of breach of fiduciary duty and the aiding and abetting of that breach.  Under the breach of fiduciary duty analysis, Orion's information is protected if it is not generally known and communicated to another under an express or implied agreement limiting its use or disclosure. *Engineered Mechanical Services, Inc. v. Langlois*, 464 So. 2d 329, 334 (La. App. 1st Cir. 1984); *Am. Precision Vibrator Co. v. Natl. Air Vibrator Co.,* 764 S.W.2d 274, 278 (Tex.Civ.App.-Houston [1st Dist.] 1988), *as modified*, 771 S.W.2d 562 (Tex.Civ.App.-Houston [1st Dist.] 1989).

Finally, Orion's confidential, proprietary, and trade secret information was protected from Coyle's misappropriation by two different agreements between Orion and Coyle. One, the *Ethics Code* acknowledged, signed, and agreed to by Coyle prohibited him from disclosing: "trade secrets or confidential business information, including any information regarding our customers, employees, training materials, financial matters, etc." Two, the *Ethics Policy Statement* acknowledged, signed, and agreed to by Coyle also prohibited him from removing, retaining, or disclosing: "[a]ll files, documents, email, technology, specifications, designs, processes, plans, intellectual property, and other materials or items (regardless of media, written, electronic or otherwise, and whether stored in local or central databases, on personal computers, in files or otherwise) of or developed or conceived by or for Orion" and characterized the same as "the *exclusive property of Orion*." By acknowledging, signing, and agreeing to the *Ethics*

*Code* and *Ethics Policy Statement*, Coyle made clear that he understood the confidential nature of the information he sent to his private email account, and there is no legitimate explanation for Coyle's conduct other than that he seeks to use the information to benefit himself and Crosby Dredging.

In this case, the confidential, proprietary, and trade secret information that Coyle forwarded to his personal email, and which the evidence shows Defendants still possess, meet each of the criteria above. Orion took reasonable efforts to ensure that its information was protected by ensuring that its employees signed the aforementioned employment agreements and by only releasing such information to employees on a "need to know" basis for the sole purpose of Orion's benefit. Under Louisiana law, reasonable efforts include advising employees of the existence of a trade secret, limiting access to a trade secret on a "need to know basis," and controlling that access. La. R.S. 51:1431, Comment (e). Moreover, Louisiana and Texas courts do not require that extreme and unduly expensive procedures be taken to protect proprietary information and instead focuses on what is reasonable to maintain secrecy under the circumstances. *Tubular Threading, Inc. v. Scandaliato*, 443 So.2d 712, 714 (La. App. 5th Cir. Dec. 8, 1983); *Tubos de Acero de Mexico v. American Intern. Inv.*, 292 F.3d 471, 483 (5th Cir. 2002); *Am. Precision Vibrator Co.*, 764 S.W.2d 274, 278 . Therefore, Orion took reasonable efforts in accordance with Louisiana law, Texas law, and federal law.

Furthermore, the information clearly "derives independent economic value" as it details Orion's product sales and trends, pricing models, customer information, marketing plans, budgets, projected sales, and other sensitive information that would greatly benefit any business in its field. Indeed, just one of the spreadsheets that Coyle emailed to his personal email account days prior to his resignation detailed prospective projects **through 2018** and included all

projects, lists of the customers and their contacts, descriptions of the projects, the locations, the project schedules, their estimated budgets, and specific comments regarding each project.  The aggregate amount of the projects detailed in the spreadsheet Coyle emailed to himself on January 9, 2017 (the day he gave his two-weeks' notice), is several hundred million dollars.

The confidential, proprietary, and trade secret information taken by Coyle was not known to Orion's competitors and would be of considerable value to them for the next two years, as it would allow Orion's competitor – Crosby Dredging – to target the same projects without expending the considerable time and resources that Orion did in creating the spreadsheet, developing the business strategy and originating the data. Therefore, Orion's confidential, proprietary, and trade secret information was clearly protected from misappropriation.

### 2.  Coyle Improperly Accessed and Transmitted Orion's Confidential, Proprietary, and Trade Secret Information

The evidence also shows that Defendants realized their conspiracy to misappropriate Orion's confidential, proprietary, and trade secret information to unlawfully compete against Orion and are currently in unlawful possession of Orion's confidential property.

First,  under the Defend Trade Secrets Act, the Louisiana Uniform Trade Secret Act, and the Texas Uniform Trade Secret Act, the term "misappropriation" means: (1) the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret… 18 U.S.C. §1839(5); La. Rev. Stat. §51:1431(2); Tex. Civ. Prac. & Rem. Code Ann. § 134A.003. Here, Coyle accessed without authorization and/or exceed his authorization Orion's confidential, proprietary, and trade secret information for his benefit and for the benefit of his new employer, Crosby Dredging.  Furthermore, Defendants have refused to return Orion's

confidential, proprietary, and trade secret information.  Defendants' acts clearly constitute a misappropriation under federal, Texas, and Louisiana law.

Furthermore, Coyle also improperly obtained and withheld this information in violation of the basic principles of contract law. An agreement not to use confidential information is enforceable if the information used is, in fact, confidential. *NCH Corp. v. Broyles*, 749 F.2d 247, 253 (5th Cir. 1985). And even in the absence of a contract not to disclose confidential information, an agent has a duty not to use or communicate information given in confidence in competition with or to the injury of the principal . . . ." *Id.* at 253. This rule applies to information which is stated to be confidential, information which the agent should know her principal would not care to have revealed to others or used in competition with it, and "to unique business methods of the employer, trade secrets, lists of names and all other matters which are peculiarly known in the employer's business." *Johnson Controls, Inc. v. Guidry*, 724 F. Supp. 2d 612, 625–26 (W.D. La. 2010). Moreover, under a common law breach of fiduciary duty analysis, a defendant cannot use or disclose information obtained in violation of the confidence, and to the injury of, the plaintiff. *Engineered Mechanical Services*, 464 So. 2d at 334. Here, Coyle acknowledged, signed, and agreed to the *Ethics Code* and *Ethics Policy Statement*. His actions clearly violate the provisions of that policy that prevent the use of Orion's confidential, proprietary, and trade secret information for personal benefit.

Finally, under the Louisiana Unfair Trade Practices and Consumer Protection Law, a party cannot engage in unfair methods of competition or use unfair or deceptive acts in the conduct of any trade or commerce. La. Stat. Ann. § 51:1405. Similarly, the Act specifically provides that it shall be unlawful for a person to develop or manufacture a product, or to develop or supply a service using stolen or misappropriated property. La. Stat. Ann. § 51:1427. Here, the

evidence shows that Defendants are using Orion's confidential, proprietary, and trade secret information for their benefit to unfairly compete.

The case law supports Orion. For instance, in *B&G Crane Service, L.L.C. v. Duvic*, the Court of Appeals found that the company's stolen pricing and bid/quote information were trade secrets because they were "confidential in nature and content; efforts were made by the plaintiff to maintain and protect its confidentiality; the confidential nature of the information was expressly known to [the employee]; and, [the employee] had been expressly prohibited from disclosing the information to anyone, specifically the defendants for whom he was going to work." 05-1798, *5 (La. App. 1 Cir. 5/5/06), 935 So. 2d 164, 167. The Court therefore issued the requested injunctive relief. Moreover, the Court of Appeals made several observations that should further encourage this Court to grant the relief Orion seeks, as the facts of the two cases are quite similar:

> [N]otwithstanding the absence of any direct evidence that defendants are presently in possession of the information[,] . . . it is a matter of common knowledge and simple logic that the information which the defendants admit (after being caught) possessing, could have easily been reproduced and maintained by various methods: it could have been downloaded onto computers at other Turner Bros. locations or it could have been printed and photocopied and kept in files at locations other than Turner Bros.'s Prairieville office. It could even have been handwritten and kept simply anywhere. **The evidence of defendants' past conduct certainly supports any of these or even other possibilities**.

05-1798, *8-9; 935 So. 2d at 168-69 (emphasis added).

In sum, Orion has established that it will likely prevail on the merits. Orion can prove that Coyle breached his statutory, ethical, and fiduciary obligations, misappropriated Orion's confidential, proprietary, and trade secret information, or at the very least that there is a threat of misappropriation by Defendants that will result in irreparable harm to Orion.

### C.   ORION WILL SUFFER IRREPARABLE HARM

Orion will suffer irreparable injury if an immediate injunction is not granted. Irreparable injury is harm that "cannot be undone through monetary damages," that is, harm for which money damages are inadequate or for which money damages are "especially difficult" to compute. *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 810 fn. 1 (5th Cir. 1989). The "central inquiry in deciding whether there is a substantial threat of irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages." *Allied Marketing Group, Inc.*, 878 F.2d at 810 fn. 1.

The Fifth Circuit has held that using or disclosing even one trade secret to a competitor of the employee's former employer may create a substantial threat of irreparable injury. *Newsouth Commc'ns Corp. v. Universal Tel. Co.*, No. CIV.A. 02-2722, 2002 WL 31246558, at *21 (E.D. La. Oct. 4, 2002) (citing *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1191–92 (5th Cir.1984) and *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503 (5th Cir. 1982)). Under both federal and state law, actual *or threatened* misappropriation may be enjoined. La. Rev. Stat. § 51:1432(A); 18 U.S.C. § 1836 (b)(3)(A)(i) (emphasis added). Additionally, courts routinely recognize that "a loss of prospective goodwill can constitute irreparable harm." *Daniels*, 812 F. Supp. 2d at 787 (citing *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995). "The use of an employer's confidential information and the possible loss of customers is sufficient to establish irreparable harm." *Leslie*, 594 F. Supp. 2d at 757 (citing *Unisource Worldwide, Inc. v. Valenti*, 196 F.Supp.2d 269, 280 (E.D.N.Y. 2002); *Ecolab Inc. v. Paolo*, 753 F. Supp. 1100, 1110 (E.D.N.Y. 1991)).

In a similar context, the Fifth Circuit has stated that damages are incalculable when determining the exploitation of an employer's clients. *Merrill Lynch, Pierce, Fenner & Smith*,

658 F.2d 1098, 1102 n. 8 (5th Cir. 1981). When, as in this action, "trade secrets and goodwill are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable . . . ." *Am. Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996). Moreover, the risk that a single trade secret may be disclosed is enough to warrant injunctive relief. *FMC Corp. v. Varco Int'l., Inc.*, 677 F.2d 500, 503 (5th Cir. 1982). That is because injunctive relief is the "only way use of the [trade] secret by the former employee can be prevented." *Picker Int'l, Inc. v. Blanton*, 756 F. Supp. 971, 983 (N.D. Tex. 1990).

Orion faces very real threats and actual irreparable harm if this Court does not grant injunctive relief. With knowledge and malicious intent, Defendants conspired to and misappropriated Orion's confidential, proprietary, and trade secret information for unlawful purposes. With this information, Defendants can unlawfully compete against and harm Orion in a manner that cannot be calculated.

For example, Coyle forwarded himself a detailed spreadsheet of Orion's two-year business plan on the day he gave his two-week notice.  The spreadsheet detailing projected revenue in the form of hundreds of millions of dollars provides the customer name, project description, location, project schedule, estimated budget, customer contact, and specific comments regarding each project.  Defendants' possession of this highly  sensitive information poses a significant risk to Orion's business and could potentially cost it millions in lost profits.

Orion has incurred and is threatened to incur, the following unquantifiable harms: (1) invaluable good-will tarnished; (2) invaluable opportunities lost; (3) invaluable resources misused; and (4) invaluable business operations disrupted.

**D.     ORION'S INJURY OUTWEIGHS THREATENED HARM TO COYLE, CROSBY TEXAS, AND CROSBY LOUISIANA**

This Court must also determine whether the threatened injury outweighs any damage that an injunction might cause. *See Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999). Orion is seeking narrowly tailored relief designed to protect its legitimate business interests and to ensure the confidential, proprietary, and trade secret information that was misappropriated by Defendants is not used to unfairly compete against it. To be clear, Orion does not seek to restrict Defendants' ability to compete; Orion only seeks to ensure that Defendants' competition is fair and legal. Moreover, Orion seeks immediate access to Coyle's personal and business computer, external devices, cellphone, and email accounts on an expedited basis in order to determine the extent of the misappropriation and to preserve evidence.

If this Court does not provide the relief sought, then Defendants use of this information will cause Orion irreparable and incalculable harm as Crosby Dredging – a direct competitor – will receive clear competitive advantages over Orion that will result in Orion losing long-held customers and targeted projects, and prevent it from recognizing significant amounts of revenue. Conversely, enforcement of applicable federal and state trade secret and unfair competition law, the *Ethics Code*, *the Ethics Policy Statement*, and Coyle's legal obligations arising under common law will not cause Defendants any undue hardship.

The requested injunctive relief and forensic examination sought in this case are equitable and proper, given the nature of this case, the trade secrets involved, and Coyle's deceptive acts. A federal court in Louisiana has granted nearly the exact injunctive relief that Orion is requesting under nearly identical facts here. That is, a former employee began negotiating employment with a direct competitor weeks before his resignation, at which point he began emailing his former employer's confidential information and trade secrets to his personal email account from his

former employer's email account and then deleting those emails from the former employer's computer system. *See ChillCo, Inc. v. Jay Yuratich and Texas Gulf Refrigeration, Inc. d/b/a Texas Gulf Refrigeration Industrial Sales & Rentals*, Temporary Restraining Order, No. 12-2152, (E.D. La. Aug. 24, 2012).

Other federal courts have done the same. *See, e.g., Balboa Threadworks, Inc. v. Stucky*, No. 05–11157–JTM–DWB, 2006 WL 763668, at *3 (D.Kan. Mar.24, 2006) (finding that forensic examinations are justified, "in cases involving both trade secrets and electronic evidence"); *ClearOne Communications, Inc. v. Chiang*, 608 F. Supp. 2d 1270, 1284-85 (D. Utah 2009) (ordering computer forensics of defendants); *Pyro Spectaculars North, Inc. v. Souza*, 861 F. Supp. 2d 1079, 1086 (E.D. Cal. 2012) (allowing expedited discovery with computer forensics); *Genworth Fin. Wealth Management, Inc. v. McMullan*, 267 F.R.D. 443, 445 (D. Conn. Jun. 1, 2010) (ordering computers and electronic media devices for mirror imaging and examination by a neutral court-appointed forensic expert in a trade secret case); *McCann v. Barton*, No. 08-00574, 2009 WL 900741, at *15 (W.D. Mo. Apr. 1, 2009) (ordering forensic computer and server examination of home and company equipment in a trade secrets case); *Advanced Tactical Ordnance Systems LLC v. Real Action Paintball Inc.*, No. 12-0296, 2013 U.S. Dist. LEXIS 25022, at * 3 (N.D. Ind. Feb. 25, 2013) (ordering production of defendant's entire business database in trademark infringement case); *SKF USA Inc. v. Bjerkness*, 636 F.Supp. 2d 696, 717(N.D. Ill. 2009)(ordering computer inspection in computer fraud abuse act case); *Ameriwood Industries, Inc. v. Liberman*, No. 06–0524, 2006 WL 3825291, at *7 (E.D. Mo. Dec. 27, 2006) (ordering forensics examinations in a computer fraud abuse act and trade secret case); *AutoNation, Inc. v. Hatfield*, 2006 WL 60547, * 2 (Fla. Cir. Ct. Jan. 4, 2006)(ordering forensic inspection of personal computer in trade secrets case).

E.      **INJUNCTIVE RELIEF WILL NOT DISSERVE THE PUBLIC INTEREST**

Enjoining Defendants from using Orion's proprietary, confidential, and trade secret information will not disserve the public interest, as there is no suggestion that requiring Defendants to obey the law will in any way harm the public. Instead, finding in Orion's favor promotes fair competition, ethical behavior, honest work, and innovation.

F.      **EXPEDITED DISCOVERY RELATED TO THE MERITS OF PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF, INCLUDING AN IMMEDIATE FORENSIC INSPECTION, IS WARRANTED**

District courts have broad discretion to order expedited discovery, including digital forensics, in connection with requests for injunctive relief. *See Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) ("expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings"); *Edudata Corp. v. Scientific Computers, Inc.*, 599 F.Supp. 1084, 1088 (D. Minn. 1984) (expedited discovery would "better enable the court to judge the parties' interests and respective chances for success on the merits" a preliminary injunction hearing); *Consumer Sales & Mktg. Inc. v. Digital Equip. Corp.*, No. 95-5049, 1995 U.S. Dist. LEXIS 13374, at * 21 (N.D. Ill. Sept. 11, 1995) (extending temporary restraining order and allowing expedited discovery to prepare for preliminary injunction hearing); Advisory Committee Notes to Fed. R. Civ. P. 26(d) ("discovery can begin earlier . . . in some cases, such as those involving requests for a preliminary injunction . . ."). District courts have the authority to enter an expedited discovery schedule, especially when irreparable injury to the plaintiff is likely. *See Haley v. Merial, Ltd.*, No. 09-94, 2010 WL 2710637, at *1 (N.D. Miss. July 7, 2010) (court specifically "determined that the plaintiffs should be allowed to conduct limited written discovery related to their motion for preliminary injunction currently pending before the district judge"); *H&W Indus., Inc. v.*

*Formosa Plastics Corp., USA,* 860 F.2d 172, 176 (5th Cir. 1988) (district court ordered expedited discovery for a preliminary injunction hearing).

Due to the ongoing nature of Defendants' wrongful conduct, expedited discovery is necessary in this matter. As discussed *supra*, the timing of Coyle's actions paint a clear picture that his misappropriation of Plaintiff's confidential, proprietary, and trade secret information was solely intended to help himself and Crosby Dredging compete unlawfully against Orion.  While Plaintiff knows with certainty that *some* protected information was taken for this nefarious purpose, Plaintiff must still determine: (1) the extent to which Crosby Dredging induced Coyle's unlawful activity; (2) the identity of any recipients who have received or accessed the protected information misappropriated by Coyle; and (3) if other protected information was misappropriated by Coyle by other means.

Accordingly, without expedited discovery, Plaintiff cannot fully measure the scope of the threat created by Defendants' actions, nor cannot it know if additional injunctive relief is warranted. For these same reasons, without expedited discovery, Plaintiff will suffer irreparable harm and, additionally, will be limited in its ability to prove its case at any future hearing on its requests for  injunctive relief. If Plaintiff must wait to conduct forensics and take discovery in the normal course, it will be forced to argue on an incomplete record, and Defendants will continue their wrongful conduct in unfairly competing with Plaintiffs confidential, proprietary, and trade secret information and soliciting Plaintiff's customers. On the other hand, allowing expedited discovery will place the Court in a better position to evaluate Plaintiff's requests for injunctive relief and prevent further damage to Plaintiff.

**V.   CONCLUSION**

Coyle emailed Orion's confidential information and trade secrets to his personal email on the exact day he gave his two-week' notice. Then, immediately after he resigned, he took a position with Orion's competitor, Crosby Dredging. Coyle's actions render his intent unmistakable. The logical conclusion to reach is that he acted in concert with Crosby Dredging to misappropriate Orion's confidential information and trade secrets in order unfairly compete against Orion. Furthermore, as an agent of Crosby Dredging, Coyle continues to exercise control over Orion's confidential information and trade secrets with the intent of using that information, which consists of Orion's **two-year strategic plan representing hundreds of millions of dollars of revenue.**

Orion has demonstrated that it suffers the threat of irreparable harm if the injunctive relief sought is not granted. The facts plainly establish that Orion is likely to succeed on the merits of its claims relating to Defendants' misappropriation of its confidential, proprietary, and trade secret information. Due to the acute danger posed by Coyle's actions – loss of profits totaling in the millions as well as loss of good will – Orion must seek injunctive relief from this Court to preserve and protect its confidential information and prevent ongoing irreparable harm. To that end, Orion respectfully urges this Honorable Court to:

1. Enter a temporary restraining order enjoining Defendants, Mark Coyle, Crosby Dredging, LLC, formed under Texas law, and Crosby Dredging, LLC, formed under Louisiana law, and their agents, employees, independent contractors and all persons acting with them, from:

   a. destroying, altering, erasing, secreting, or failing to preserve any and all of Orion's business materials, property, proprietary information, confidential information or trade secrets and/or any and all record or documents that may be

relevant to this lawsuit; wherever located, and whatever form, including but not limited to any document, email, report, software, files, electronic data, tangible evidence, financial records, and any and all communications between Coyle and any employee, member, investor, or consultant of Crosby Dredging;

b. disclosing, disseminating, or using for its own purpose or any other purpose Orion's confidential information and trade secrets, including, but not limited to, all files (and the information contained therein) that Coyle removed from Orion without authorization. For purposes of this order "confidential information and trade secrets" is defined as all files, documents, email, technology, specifications, designs, processes, plans, intellectual property, and other materials or items (regardless of media, written, electronic or otherwise, and whether stored in local or central databases, on personal computers, in files or otherwise) of or developed or conceived by or for Orion;

c. Accessing, studying or taking notes regarding Orion's confidential information or trade secrets that Coyle removed and/or retained, including all business-related information concerning Orion.

2. Schedule a hearing on Plaintiff's request for a preliminary restraining order at the earliest convenience of the Court and the parties involved;

3. Enter an order that:

a. grants Plaintiff leave to commence expedited discovery immediately in aid of preliminary injunction proceedings before the Court;

b. requires Defendants to provide access for inspection and imaging, within five days of this order, of any and all electronic devices and email accounts that may

contain Plaintiff's confidential, proprietary, and trade secret information, including, but not limited to, Mark Coyle's personal and work email accounts, any home and work computers, Blackberrys, iPhones, personal data assistants, memory devices, flash drives and other electronic media storage devices; and

c.   requires each of the Defendants to appear for deposition within ten days' notice of the order.

Respectfully submitted this February 16, 2017.

 /s/ Joseph F. Lavigne
JOSEPH F. LAVIGNE (Federal ID No. 559956)
**Attorney In Charge**
JASON A. CULOTTA (Federal ID No. 2859054)
Of Counsel
*Jones Walker LLP*
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana  70170-5100
Telephone: (504) 582-8000
Facsimile: (504) 582-8015
Email: jlavigne@joneswalker.com
Email: jculotta@joneswalker.com

and

C. VERONICA RIVAS (TX Bar No. 24033127)
Of Counsel
AMY K. ANDERSON (TX Bar No. 24077064)
Of Counsel
1001 Fannin Street, Suite 2450
*Jones Walker LLP*
Houston, Texas 77002
Phone:  713.437.1800
Facsimile:  713.437.1810
Email:  vrivasmolloy@joneswalker.com
Email:  aanderson@joneswalker.com

*Counsel for Plaintiff, Orion Marine Construction, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on February 16, 2017, I electronically filed the foregoing *Memorandum of Law in Support of its Motion for Temporary Restraining Order, to Set a Preliminary Injunction Hearing and for an Order Permitting Expedited Discovery* with the Clerk of Court using the CM/ECF System which will be served on all parties via email.

 */s/ Joseph F. Lavigne*
JOSEPH F. LAVIGNE