UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ORION MARINE CONSTRUCTION, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-00522 |
| | § | |
| MARK COYLE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending in the above-referenced cause are the following motions: (1) Plaintiff's Emergency Motion for Contempt, Doc. 26; (2) Plaintiff's Emergency Motion to Modify the Consent Preliminary Injunction Order, Doc. 27; (3) Plaintiff's Motion for Expedited Hearings, Doc. 28; (4) Defendants' Emergency Opposed Motion to Disqualify Experts and for Sanctions Against Plaintiff, Doc. 33; and (5) Plaintiff's Opposed Motion for Protective Order and to Quash Defendants' Subpoenas Duces Tecum to Plaintiff's Non-Party Expert, Doc. 34.

On March 27, 2017, the parties appeared before this Court for a hearing on the pending motions. After three days of proceedings during which the Court heard extensive testimony, as well as a thorough review of the filings,[1] hearing exhibits, and relevant law, the Court denies Defendants' motions and grants Plaintiff's motions with the exception of Plaintiff's Motion for Expedited Hearings, which is now moot.

**I. Background**

This case arises from Defendant Mark Coyle's ("Coyle") alleged misappropriation of trade secrets before and immediately after departing Plaintiff Orion Marine Construction, Inc.

---

[1] The Court has also thoroughly reviewed the parties' supplemental briefings and the replies thereto. Docs. 43, 46, 50, 51.

("Orion") to work for a major competitor, Defendants Crosby Dredging, LLC (TX) and Crosby Dredging, LLC's (LA) (collectively, "Crosby").

Coyle's employment courtship with Crosby began sometime in September 2016. Doc. 26-2 at 4; Tr. 1-23:7–1-24:11. His initial discussions about employment opportunities with Crosby started with Crosby's Dredging Operations Manager, Roland Maturin ("Maturin") on LinkedIn, and soon after Coyle sent his resume to Crosby. *Id.* Coyle interviewed with Crosby in New Orleans on January 4, 2017, Tr. 1-34:10–15. On January 6, 2017, Coyle sent a draft employment agreement to Crosby, the terms of which awarded him a 1% commission on any projects he brought to Crosby. Ex. 5. That same day, he drafted his resignation letter to Orion. On January 9, Coyle submitted his resignation letter to the company. Tr. 1-38:12–1-39:5.

During his employment tenure with Orion, Coyle signed acknowledgments of his receipt and certification of compliance with Orion's Corporate Ethics and Legal Compliance Policy and Code of Business Conduct and Ethics. Exs. 2, 4. Nevertheless, soon after he began courting Crosby in September, Coyle began forwarding confidential emails regarding bid proposals and other proprietary information to his personal email address. *See, e.g.*, Exs. 11, 12. Coyle continued forwarding confidential e-mails, peaking in December and January, until after his official resignation from Orion. *See, e.g.*, Exs. 8, 16, 17. During the same timeframe, he also downloaded Orion documents to a number of thumb drives, a MyPassport portable hard drive device, a Surface 3 tablet computer device, and a Dropbox account. Doc. 27-1; Tr. 1-140:8–12.

After discovering Coyle's actions, on January 25, 2017, Peter Bulcher ("Bulcher"), Orion's Vice President and General Counsel, sent an email to Coyle advising him to "return any and all confidential and or proprietary information . . . taken with you when you left the Company," and "to the extent such information . . . cannot be physically returned to the

Company" to "keep such information confidential." Ex. 21. Coyle did not respond to the letter and engaged counsel instead. Tr. 1-108:7–1-109:5. In spite of Bulcher's letter, on February 12, 2017, Coyle proceeded to delete hundreds of the files he had taken. Doc. 26-2 at 12. *See also* Ex. 30. A few days later, on February 16, Lavigne sent an email to Crosby and Coyle notifying Defendants of the impending lawsuit and advising Coyle that he was obligated to maintain and not destroy documents or email. Doc. 22.

On February 17, 2017, this Court entered a Temporary Restraining Order ("TRO") enjoining Defendants from destroying or erasing any of Orion's business materials or proprietary information and all records or documents relevant to the suit "in any form" and "wherever located." Doc. 12. The terms of the TRO specifically stated that its terms encompassed documents, emails, reports, software, files and electronic data. *Id.* On February 21, 2017—after the TRO was entered—Coyle proceeded to delete another 128 files. Doc. 26-2 at 12. *See also* Ex. 30. Then, on March 1, 2017, he deleted a file folder. Doc. 26-2 at 12. *See also* Ex. 30.

On March 3, 2017, the Court entered the parties' Consent Preliminary Injunction Order ("PIO"). Doc. 21. Under the terms of the PIO, Defendants agreed that they and "their agents, employees, independent contractors, and all persons acting with them" would be enjoined and restrained from:

   a. destroying, altering, erasing, secreting, or failing to preserve any and all of Orion's business materials, property, proprietary information, confidential information or trade secrets and/or any and all record or documents that may be relevant to this lawsuit; wherever located, and whatever form, including but not limited to any document, email, report, software, files, electronic data, tangible evidence, financial records, and any and all communications between Coyle and any employee, member, investor, or consultant of Crosby Dredging;

   b. disclosing, disseminating, or using for its own purpose or any other purpose Orion's confidential information and trade secrets, including, but not limited to, all files (and the information contained therein) that Coyle removed from Orion without authorization. For purposes of this order "confidential information and

      trade secrets" is defined as all files, documents, email, technology, specifications, designs, processes, plans, intellectual property, and other materials or items (regardless of media, written, electronic or otherwise, and whether stored in local or central databases, on personal computers, in files or otherwise) of or developed or conceived by or for Orion. However, this restriction does not apply to any documents or information available in the public domain and was not improperly placed in the public domain by any Defendant;

  c. accessing, studying or taking notes regarding Orion's confidential information or trade secrets that Coyle removed and/or retained, including all business-related information concerning Orion.

Doc. 21 ¶ 4. The parties also agreed to comply with the Forensic Protocol Agreement ("FPA"), which required Defendants to produce all email accounts and devices (servers, computers, and external storage devices) belonging to or used by Coyle and/or Martech Marine Consulting, LLC within seven days of the entry of the PIO. *Id.* ¶ 5, p. 21.

    During discussions on the scope of the PIO, Orion's counsel, Joseph Lavigne ("Lavigne"), proposed using LCG Discovery Experts, LLC ("LCG") as the forensic examiners. Doc. 40-3. Defendants agreed. *See* Doc. 21. Thus, the PIO designated LCG as the forensic examiner. *Id.* at 5. LCG's Director of Investigations is Andrew Frisbie ("Frisbie"). Tr. 2-48:25–2-49:5.

    After the preliminary results indicated that Coyle had downloaded hundreds of Orion's files during his courtship with Crosby—and then deleted them after Orion initiated legal action against Defendants—Orion filed its Emergency Motion for Contempt, Doc. 26, Emergency Motion to Modify the Consent Preliminary Injunction Order, Doc. 27, and Motion for Expedited Hearings, Doc. 28. Defendants' responded with their Emergency Opposed Motion to Disqualify Experts and for Sanctions Against Plaintiff, Doc. 33. Orion then filed its Opposed Motion for Protective Order and to Quash Defendants' Subpoenas Duces Tecum to Plaintiff's Non-Party Expert, Doc. 34.

The hearing on the pending motions began on March 27, 2017 and lasted for three days. During the proceedings, the Court was presented with hundreds of pages of exhibits and heard testimony from Maturin, Coyle, and Frisbie. The Court arrived at its decision for the reasons that follow.

**II. Legal Principles and Analysis**

**A. Orion's Motion for Contempt**

District courts possess the inherent authority to enforce their own injunctive decrees. *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citing *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985)). When a party violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order, he commits contempt. *SEC v. First Fin. Grp.*, 659 F.2d 660, 669 (5th Cir. 1981) (citations omitted). Because "contempt is an affront to the court issuing the order," *Waffenschmidt*, 763 F.2d at 716, "the willfulness of the contemnor's actions" are irrelevant to a finding of contempt, *Virgin Mobile USA, LLC v. World MMP Inc.*, No. 06-cv-2444, 2007 WL 294145, at *2 (S.D. Tex. Jan. 29, 2007).

"A party moving for civil contempt must demonstrate by clear and convincing evidence: (1) that a valid court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Id*. (citing *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)). The clear and convincing evidence standard is higher than the "preponderance of the evidence" standard, common in civil cases, but not as high as "beyond a reasonable doubt." *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976) (citations omitted). In the contempt context, clear and convincing evidence is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of

the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *TravelHost*, 68 F.3d at 961 (citation and internal quotation marks omitted).

In its Motion for Contempt, Orion avers that Coyle and Crosby violated the Court's TRO and the PIO because "Defendants willfully secreted and destroyed Plaintiff's confidential and proprietary information and refused to provide the Inspector access to at least two Devices and one Account." Doc. 26 at 2. Specifically, Orion argues that Coyle intentionally deleted over 600 of Orion's documents from a OneDrive cloud-sharing account, many of which were deleted after the TRO and PIO forbidding such activity, and Coyle did not provide the forensic examiner with access to a Boost Mobile phone, MyPassport device, and Dropbox account. *Id.* at 2–4. Orion asks the Court to require production of the Boost Mobile phone, MyPassport device, and Dropbox login credentials. *Id.* at 4–5. Orion also asks that Defendants give the forensic examiners access to any other account or device identified as being withheld, pay the direct and out-of-pocket costs associated with Plaintiff's efforts to enforce the PIO, and pay the costs of all third-party forensic analysis that has been undertaken. *Id.* at 5.

During the hearing on this matter, Coyle admitted to deleting electronic files, withholding a MyPassport portable hard drive device, withholding a Surface 3 tablet computer device, and not identifying a Dropbox account. Coyle admitted he deleted electronic files, Tr. 1-133:1–4, but he stated that he believed he was complying with Bulcher's letter when he deleted the first round on February 12, 2017. Tr. 1-180:17–1-181:3. He also stated that he did not believe he was barred from deleting anything after receiving Lavigne's letter. *Id.* 1-113:11–19. Although he admits that he finally understood he could not delete files after he received the Court's February 17 Order,

he asserts that he did not receive notice of that Order until February 21. *Id.* 1-114:10–1-115:20. Nevertheless, Coyle proceeded to delete 128 files on February 21, 2017, as well as a file folder on March 1, 2017. *Id.* 1-182:3–5; 1-183:15–1-184:17.

As to the devices and Dropbox account that Orion argues that Coyle did not hand over, Coyle testified that that the FPA required him to provide the forensic examiners with all his personal and business accounts and devices by March 10, 2017, not the MyPassport and Surface 3 devices owned by his wife nor the Dropbox account already accessible by the Forensic examiners. Coyle claims he did not hand over the MyPassport device and the Surface 3 device to LCG because he no longer had control of them at the time the FPA was issued. His wife then controlled those devices. But Coyle admitted that he had custody and control of those devices when he downloaded files to the MyPassport device and OneDrive account accessible from the Surface 3 device. *Id.* 1-147:11–22; 1-156:4–18; 1-171:21–1-172:17. Coyle also claims that he did not believe he had to identify the password-protected Dropbox account to LCG because it was integrated into his Crosby laptop, and the forensic examiners should have had access to the Dropbox account because Coyle provided his Crosby laptop to LCG. *Id.* 1-161:11–164:10. Thus, Coyle testified that he provided everything that he "owned" and that was in his "custody, possession, and control." *Id.* 1-119:22–1-122:10.

The Court is not persuaded by Coyle's explanations for his refusal to comply with the TRO and PIO to the letter. As he testified, Coyle sought advice from counsel on or about January 25, 2017, when he received Bulcher's letter. *Id.* 1-108:7–1-109:5. The Court finds it difficult to believe that a sophisticated businessman like Coyle—one who sought and retained counsel immediately after receiving Orion's initial threatening letter—is as daft as he feigned in the hearing. Even if there was some question about how to comply with Orion's request after the

initial Orion letter or Lavigne's subsequent email, the Court's Orders were abundantly clear: Coyle was under strict instruction not to destroy or delete any files. Yet he admits, and the record shows, that he deleted files anyway. Also, under the terms of the PIO, Coyle was required to comply with the FPA and provide the forensic examiner with access to "all personal and business Devices and Accounts belonging to *or used by* Coyle." Doc. 21 at 5. *See also id.* at 10 (defining "Devices" and "Accounts" as all devices "owned or used" and accounts "owned, operated, or used" by Coyle). Accordingly, the Court concludes that Coyle's reliance on semantics to avoid producing the contested devices and accounts is unavailing.

While the evidence is damning for Coyle, it is not so clear for Crosby. The evidence does not show that Crosby deliberately instructed Coyle not to comply with this Court's Orders or took any affirmative action that would warrant a finding of contempt. Accordingly, the Court grants Orion's Motion as to Coyle but not Crosby.

### B. Orion's Motion to Modify the PIO

"A district court modifies an injunction when it changes the obligations imposed by the injunction." *In re Deepwater Horizon*, 793 F.3d 479, 491 (5th Cir. 2015) (quoting 16A Wright & Miller § 3924.2) (internal quotation marks omitted). "Generally, a court should only modify an injunction to achieve the original purposes of the injunction, if those purposes have not been fully achieved." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 579 (5th Cir. 1996) (citing *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248–49 (1968)). Nevertheless, the Fifth Circuit has made it clear that "[i]f injunctive relief is 'to be enforced with fairness and precision,' it must be flexible." *Moore v. Tangipahoa Par. Sch. Bd.*, 864 F.3d 401, 406 (5th Cir. 2017) (quoting *Freeman v. Pitts*, 503 U.S. 467, 487 (1992)). Indeed, "sound judicial discretion may call for the modification of the terms of an injunctive decree if the

circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 437 (1976). Accordingly, "district court[s] may 'adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action.'" *Moore*, 864 F.3d at 406 (quoting *Freeman*, 503 U.S. at 487).

In its Motion to Modify the PIO, Orion argues that Defendants intentionally secreted Orion's bid portfolios for a number of high value projects that Coyle worked on for Orion. And Coyle is now actively submitting competing bids for these projects on Crosby's behalf. Doc. 27 at 2. As a result, Orion asks this Court to modify the PIO pursuant to § 134A.003 of the Texas Uniform Trade Secrets Act ("TUTSA") to enjoin Defendants from submitting bids on the following projects: (1) Stolt Ship Dock #11 for Stolthaven Houston, Inc.; (2) the HMS Ship Dock Dredging and Levee Project for Avera Companies Inc. and/or Kirby Corporation; (3) the Oiltanking Texas City Project; (4) the Phases 2-2 Ship Dock Expansion for ITC Pasadena; and (5) the Targa Resources, Inc. Dock Maintenance Projects (collectively, "Target Projects"). *Id.*; Doc. 27-1 at 1. Orion also requests that the Court "enjoin Defendants from competing in the marine construction industry and/or bidding on any project in which Defendant Mark Coyle represented Orion and/or worked on or for which he misappropriated confidential information until a full trial on the merits." Doc. 27 at 3.

In this case, both Coyle and Maturin testified that a number of the documents that Coyle emailed to himself on the Target Projects are confidential and proprietary, including bid proposals, draft agreements, email communications with project developers, surveys, budgets, drawings, images, and topographical data. *See, e.g.*, Tr. 1-63:20–1-64:5; 1-65:12–1-66:4; 1-67:9 – 1-68:1; 1-55:11–13; 1-77:17–20; 1-91:2–12; 1-96:6–18; 3-35:7–12; 3-27:22–3-38:1; 3-30:20–

22; 3-59:10–12. Although Coyle avers that he did not collect these files for an improper purpose, he admits that he is now pursuing the Target Projects on behalf of Crosby and will receive a 1% commission if Crosby's bid wins. *See, e.g., id.* 1-97:18–22; 1-74:6–16; 1-89:17–23; 1-90:6–9; 1-94:9–16; 1-97:22–24; 1-98:8–11. Also, Crosby has already been awarded two of the projects for which Orion's project files were misappropriated, and Coyle will receive a 1% commission on one of those projects. *Id.* 1-100–1-105; 1-150–154.

Crosby feigns ignorance of Coyle's actions, but the Court is not persuaded. The timing of Coyle's misappropriation raises questions about how much Crosby knew and when. Coyle's document dump did not begin until his courtship with Crosby began, and the frequency and intensity of his downloads peaked in the period between his interview with Crosby and resignation from Orion. Even taking Crosby's protestations of innocence as to its knowledge of Coyle's pre-employment data dump as true, Crosby was aware of Orion's accusations against Coyle by the end of January when Coyle notified Crosby of Bulcher's letter. Whether Crosby was aware of the extent of Coyle's misappropriation before that date is irrelevant at this stage of the litigation. What is clear is that Crosby retained Coyle as the point person on the Target Projects after Orion provided Defendants with proof of Coyle's misappropriation and initiated this action. *See id.* 1-109:6–7.

Under the Texas Uniform Trade Secrets Act, "[a]ctual or threatened misappropriation may be enjoined if the order does not prohibit a person from using general knowledge, skill, and experience that person acquired during employment." Tex. Civ. Prac. & Rem. Code § 134A.003. Coyle's testimony unequivocally indicates that Coyle misappropriated confidential information on the Target Projects, he remains in possession of it, and Defendants plan to target the Target Projects. In light of the testimony and evidence from the hearing, the Court concludes that

Orion's Motion to Modify should be granted to redress the injuries caused by Coyle's unlawful actions, and Defendants should be enjoined from bidding on not only the Target Projects, but any project on which Coyle represented Orion and misappropriated confidential information until a trial on the merits. Such a remedy is not draconian, but rather tailored to prevent any further benefit to Defendants from Coyle's misappropriation until trial.

### C. Crosby's Motion to Disqualify and for Sanctions

"Federal courts have the inherent power to disqualify experts, although cases that grant disqualification are rare." *Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996) (citations omitted). Likewise, the court may sanction a party under its inherent powers "[w]hen a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute." *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir. 1993)). Nevertheless, "the threshold for the use of inherent power sanctions is high." *Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir. 1998) (quoting *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995)) (internal quotation marks omitted). Thus, there must be a "specific finding that the party acted in bad faith" to sanction a party under the court's inherent powers. *Arnold v. Fed. Nat. Mortg. Ass'n*, 569 Fed. App'x 223, 224 (5th Cir. 2014) (per curiam) (unpublished) (quoting *Crowe*, 151 F.3d at 236) (internal quotation marks omitted). "A court should invoke its inherent power to award attorney's fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) (quoting *Chambers*, 501 U.S. at 46 and citing *Amsted Indus. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994)).

In its Motion to Disqualify, Crosby argues that Orion "willfully misled" it to believe that LCG and Frisbie would act as unbiased collectors of electronically stored information. Doc. 33 at 1. Crosby avers that rather than the unbiased third-party collectors they were portrayed to be, LCG and Frisbie are actually "employed in the role of litigation experts for Orion" and worked with Orion to "concoct a narrative detrimental to the Defendants." *Id.* In support of this theory, Crosby points to the 16-page Declaration by Frisbie that Orion attached to its Motion to Modify the PIO, which details the extent of Coyle's misappropriation. *Id.* at 1–2 Accordingly, Crosby requests that the Court disqualify LCG and Frisbie from acting as experts in this matter and sanction Orion. *Id.*

The Court is not persuaded by Crosby's arguments. To begin, Crosby cites no authority for the proposition that a court may disqualify a forensic examiner for uncovering unfavorable evidence, which is then used to support an adversary's arguments. Nor is the Court aware of any. Indeed, in cases such as the one at bar, the job of forensic examiners is to look for evidence of wrongdoing on the part of the individual being accused of misappropriation. Also, the record makes clear that Crosby was aware that LCG and Frisbie were going to be retained (at Orion's suggestion) and what the PIO authorized them to do. It was also aware, presumably, that were Frisbie to uncover damning evidence against Coyle or Crosby, such evidence would support Orion's case and be used by Orion in support of its claims. Nevertheless, Defendants agreed to Lavigne's suggestion to hire him anyway. The fact that Coyle was caught with his hand in the cookie jar as a result of Frisbie's search is indeed unfortunate for Defendants, but it does not prove bad faith by Orion, fraud on the court, or the defilement of the temple of justice. *See Boland Marine*, 41 F.3d at 1005. Thus, the Court concludes that Frisbie should not be disqualified and sanctions against Orion are inappropriate. Crosby's motion is denied.

**D. Orion's Motion for Protective Order and to Quash Subpoenas**

Under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order" provided that the motion includes "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Upon a showing of good cause, the court may then "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The movant bears the burden of demonstrating the necessity of its issuance, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) and citing Charles Alan Wright, et al., *Fed. Prac. & Procedure*. § 2035, at 483–86 (2d ed. 1994)) (internal quotation marks omitted).

"Under Federal Rule of Civil Procedure 45, a court may quash or modify a subpoena if it (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817–18 (5th Cir. 2004) (citing Fed. R. Civ. P. 45(3)(A)(i)-(iv)). The burden is on the moving party "to demonstrate that compliance with the subpoena would be unreasonable and oppressive," which is determined on the facts of each case. *Id.* (citations and internal quotation marks omitted). In making this determination, courts consider "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* When the request is

made to a non-party, the court may also consider the expense and inconvenience to the non-party. *Id.*

On March 20, 2017, Defendants issued two subpoenas commanding LCG and Frisbie to produce all communications between and/or documents exchanged by Lavigne and LCG or Frisbie within four days. Docs. 34-1, 34-2. In its Motion for Protective Order and to Quash, Orion asks this Court to issue a protective order requiring Defendants to withdraw the attached subpoenas and to prevent Defendants from pursuing them further without first attempting to obtain relevant discovery from Orion directly or, in the alternative, to quash them. Doc. 34 at 1. Orion argues that Defendants' subpoenas are improper for five reasons: the subpoenas (1) attempt to conduct discovery before the Rule 26(f) conference and without leave of Court; (2) do not provide a reasonable time for compliance; (3) seek documents that Defendants concede Plaintiff possesses without seeking those documents directly from Plaintiff; (4) seek privileged work-product communications and documents exchanged by Plaintiff counsel and its expert, and (5) seek trade secret and confidential documents. *Id.* at 2.

Crosby responds that the information it seeks from the subpoenas is "necessary and vital to Crosby's defense of Orion's motions." Doc. 36 at 2. Specifically, Crosby alleges, "Orion's filing of emergency motions and expedited requests for evidentiary hearings more than justifies a departure from the normal and routine discovery schedule." *Id.* at 4. At the very least, Crosby urges the Court to "require LCG and Frisbie . . . to produce any documents obtained through review of Crosby's computer systems, any documents relevant to the relief sought by Orion and/or Crosby in their pending motions, and any documents that reflect the relationship between Orion and LCG/Frisbie, along with a privilege log for any documents withheld on the basis of alleged privilege." *Id.* at 5.

Crosby's motion appears to be moot because first, Crosby premised its requested relief on the necessity of obtaining the requested information before the hearing and those hearings have now long passed; second, the Court's denied the Defendants' Motion to Disqualify; and third, the parties were provided a list of the documents obtained by LCG after review of Crosby's computer systems at the hearing. However, to the extent there is a live controversy between the parties as to the subpoenas, the Court is persuaded by Orion's arguments. Accordingly, the Court grants Orion's Motion for Protective Order and to Quash Subpoenas.

If Defendants seek further information from LCG and Frisbie, they are advised to seek leave of Court—after demonstrating why they cannot obtain the requested documents from Orion directly in the course of normal discovery.

### III. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Emergency Opposed Motion to Disqualify Experts and for Sanctions Against Plaintiff, Doc. 33, is **DENIED** and Plaintiff's Emergency Motion to Modify the Consent Preliminary Injunction Order, Doc. 27; and Opposed Motion for Protective Order and to Quash Defendants' Subpoenas Duces Tecum to Plaintiff's Non-Party Expert, Doc. 34, are **GRANTED**. Plaintiff's Motion for Expedited Hearings, Doc. 28, is **DENIED** as moot. Finally, Plaintiff's Emergency Motion for Contempt, Doc. 26, is **GRANTED IN PART**, as to Coyle only. Accordingly, it is

**ORDERED** that Defendant Coyle is hereby **SANCTIONED** and **HELD IN CONTEMPT OF COURT** and shall comply with the following terms of this Order:

1. Coyle shall produce the Boost Moble Phone Device to the forensic examiners **immediately** so that forensics on the device can be conducted and evidence relating to Defendants' alleged trade secret theft preserved;

2. Coyle shall produce the MyPassport Device to the forensic examiners **immediately** so that forensics on the device can be conducted and evidence relating to Defendants' alleged trade secret theft preserved;

3. Coyle shall give the forensic examiners access to the Dropbox Account **immediately** so that forensics on the device can be conducted and evidence relating to Defendants' alleged trade secret theft preserved;

4. Coyle shall give the forensic examiners access to any and all Devices and/or Accounts forensic examiners identify as withheld **immediately** so that forensics on the device/account can be conducted and evidence relating to Defendants' alleged trade secret theft preserved;

5. Coyle shall pay the direct and out-of-pocket costs, including attorney's fees, associated with Plaintiff's efforts to enforce the preliminary injunction. Plaintiff will file an itemized list of its costs within 10 days following entry of this Order. These costs will be taxed against Defendants upon final approval by the Court;

6. To ensure future compliance with Court orders, Coyle shall pay the costs associated with all third-party forensic analysis that has been undertaken to date pursuant to order of the Court.

**IT IS FURTHER ORDERED** that Preliminary Injunction be and hereby is entered, enjoining and prohibiting Defendants Crosby and Coyle, and those persons in active concert or participation with Defendants along or in association with any other person or entity, from:

1. destroying, altering, erasing, secreting, or failing to preserve any and all of Orion's business materials, property, proprietary information, confidential information or trade secrets and/or any and all record or documents that may be relevant to this lawsuit; wherever located, and whatever form, including but not limited to any document, email, report, software, files, electronic data, tangible evidence, financial records, and any and all communications between Coyle and any employee, member, investor, or consultant of Crosby;

2. disclosing, disseminating, or using for its own purpose or any other purpose Orion's confidential information and trade secrets, including, but not limited to, all files (and the information contained therein) that Coyle removed from Orion without authorization. For purposes of this order "confidential information and trade secrets" is defined as all files, documents, email, technology, specifications, designs, processes, plans, intellectual property, and other materials or items (regardless of media, written, electronic or otherwise, and whether stored in local or central databases, on personal computers, in files or otherwise) of or developed or conceived by or for Orion;

3. accessing, studying or taking notes regarding Orion's confidential information or trade secrets that Coyle removed and/or retained, including all business-related information concerning Orion;

4. competing in the marine construction industry and/or bidding on any project in which Defendant Coyle represented Orion and/or worked on or for which he misappropriated confidential information until a full trial on the merits. This restriction specifically includes the following projects:

a. Stolt Ship Dock #11 for Stolthaven Houston, Inc.;

b. HMS Ship Dock Dredging and Levee Project for Avera Companies Inc. and/or Kirby Corporation;

c. Oiltanking Texas City Project;

d. Phases 2-2 Ship Dock Expansion for ITC Pasadena; and

e. Targa Resources, Inc. Dock Maintenance Projects.

**IT IS FURTHER ORDERED** that the Consent Preliminary Injunction Order, Doc. 21, remains in full force and effect in all respects not modified herein.

**IT IS FURTHER ORDERED** this Preliminary Injunction Order shall remain in effect until a final trial on the merits, unless modified by this Court.

**IT IS FURTHER ORDERED** that Defendant Crosby's subpoenas duces tecum to Plaintiff's experts, LCG Discovery Experts, LLC, and Andrew Frisbie, are **QUASHED**.

**IT IS FURTHER ORDERED** that a protective order is entered prohibiting and precluding Defendant Crosby from subpoenaing privileged documents directly from Plaintiff's expert, LCG Discovery Experts, LLC, and Andrew Frisbie, without leave of Court. Finally, it is

**ORDERED** that Plaintiff's Motion for Expedited Hearings is **MOOT**.

SIGNED at Houston, Texas, this 26th day of October, 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE